WILLIAM FIFER, ADMINISTRATOR OF THE ESTATE OF RAYMOND C. FIFER, DECEASED, V. MILTON BURCH ET AL.

FILED MARCH 18, 1903.　No. 12,729.

Lord Campbell's Act: NEGLIGENCE: LIABILITY OF EMPLOYER. An employer's act of unbridling, in connection with the driver, a mare theretofore always gentle and tractable, and putting on her a halter, and then leaving her ordinary driver to lead her to a feed-box to eat, and doing this in front of a tent on the state-fair grounds without unhitching her from a wagon, to which she was attached, there being nothing in the surroundings apparently calculated to frighten the mare, *held*, not negligent nor creating any liability of the employer, although immediately after she became unmanageable, and ran over the driver and fatally injured him.

ERROR to the district court for Lancaster county: EDWARD P. HOLMES, DISTRICT JUDGE. *Affirmed.*

*Royal D. Stearns* and *James C. McNerney,* for plaintiff in error.

*William M. Morning, Halleck F. Rose* and *Wilmer B. Comstock, contra.*

HASTINGS, C.

Plaintiff in error in this case instituted an action in the district court for Lancaster county under Lord Campbell's act to recover the sum of $5,000 for the death of Raymond C. Fifer. The latter died on May 31, 1901, as a result of injuries received in attempting to lead, by a halter, a horse hitched to a heavy wagon, after the bridle had been taken off by defendants on the state fair grounds.

The trial court instructed the jury to find for the defendants. It instructed the jury that plaintiff based his sole right of recovery upon the negligence of the defendants in removing the bridle from the horse; that negligence is the failure to do what reasonable and prudent persons would have ordinarily done under the circumstances, or the doing of what such persons would not have done; that it was necessary for plaintiff to show that the removal of the bridle from the animal, under the circumstances, was something which a reasonable and prudent person, under the circumstances, would not have done. The trial court also told the jury that the evidence shows that the animal was tractable and gentle, and had never shown any vicious disposition, and that after the bridle was removed a strong and sufficient halter was upon the horse, and that defendants' act in removing the bridle was not an act of negligence under all of the circumstances, and would warrant no recovery against them. The court also instructed the jury that a fair preponderance of the evidence showed that the deceased had hold of the halter and was standing by the horse's side when it took fright and commenced to run, and he could have relinquished his hold of the animal and avoided injury; that it was no part of his duty to risk injury by holding the animal, and whether he heard defendants' advice to let go was immaterial, if in the exercise of ordinary prudence and caution he could see danger in retaining hold of the animal, and failed to let go, he could recover nothing in this action. The court also instructed the jury that the testimony showed that a young boy was

in the wagon at deceased's invitation at the time of the accident, and if the deceased could see the danger of the boy, and as an act of heroism sought to save him from injury, then he assumed all responsibility on his part for any danger he placed himself in by his act at the time of the injury complained of.

The validity of these instructions seems to depend upon the question of whether or not, in view of all the circumstances, the unbridling of the horse, while attached to a wagon in the fair grounds, and turning her over to deceased to be led to a feed-box, was an act of negligence. If it was, and only a fair preponderance of the evidence showed contributory negligence of the deceased, that question should have been submitted to the jury; and if the boy in the wagon, although there by the deceased's invitation, was placed in danger by the negligent act of the defendants in taking off the bridle, any risk taken by the deceased in order to save the boy would not be contributory negligence, unless it was an act of rashness under the circumstances, and the incurring of a danger which no prudent person would hazard, even for such a purpose.

The essential question, therefore, seems to be whether or not the trial court was right in telling the jury that it was not negligence on defendants' part to remove the bridle. If it was negligence, it would seem that the whole question of contributory negligence, and of the right of the deceased to interpose to save the boy in the wagon, should have gone to the jury.

The animal in question was a Clydesdale mare weighing sixteen hundred and fifty pounds. She had been in use by the defendants since the preceding February. She had previously to that been owned by a Mr. Tewkesbury, who used her at first to work on a well machine drawing a rope attached to a singletree. The latter was constantly coming in contact with her heels but did not disturb her. Later she was used by Mrs. Tewkesbury and the children of the family to drive to a buggy and a two-seated carriage as a family horse. Mrs. Burch, defendant, and her

aged mother, on two occasions rode with only Mrs. Tewkesbury and the latter's sister in the surrey through the streets of Lincoln.

There is evidence by deceased's father, and by the surgeon who attended at the time of the accident, that Mr. Burch said at the time he had often told deceased that if the mare "took one of her spells to let her go." Mr. Burch denies this, and says he knew nothing of any spells on the mare's part; that what he did say was that he had told deceased on this occasion to let her go and that some spell was on her. This conversation is the only thing tending in any way to indicate any previous misconduct of the animal. The uniform testimony of all the witnesses is that she was a remarkably gentle and tractable horse, and was so considered by all who at any time had to do with her.

On the day in question the defendants, who had been engaged in gathering the tents furnished by them to the Dunkards' meeting on the fair grounds, had stopped for noon at their supply tent. Deceased, who, in working for defendants, had principal charge of the mare, drove her and the wagon about forty rods to the race track to water her, and a boy of twelve who had been assisting to gather tent stakes rode with him, and sat in the wagon while he drew water in a bucket for her. After watering they drove back and stopped at the supply tent. Mr. Burch, with the assistance of the deceased, slipped off her bridle, while deceased slipped on the halter. He then turned to hang up the bridle. His attention and that of the persons in the tent was attracted by loud calls of "Whoa" from deceased, and the mare was seen trotting away, with deceased holding the halter and trying in vain to stop her. Mr. Burch called to the boy of twelve, who was still in the wagon, to jump out, and to deceased to let the mare go. Neither obeyed. The boy says his clothes caught on the seat. Probably he was too frightened to get them loose. The man seems to have tried to get in front, and get the mare by the head. He only succeeded in getting her to trample him down and draw the heavy wagon over him.

It seems that it was proposed by some one, when the wagon was stopped before the tent, to unhitch the mare, but it was determined that it was unnecessary; that her bridle be removed, and the halter put on, and she led to the feed-box. Whose propositions these were does not appear, but in carrying them out the boy says that after Mr. Burch started away with the bridle the mare looked back at the wagon and started; that Fifer partly stopped her, and she looked back again and started faster, and Fifer ran along at her side for a while, and, in some way, reaching for her head, fell down, and she stepped on him twice and the wagon passed over him, as has been stated. The boy stayed in the wagon and was taken out unhurt when the mare was caught just outside the fair-ground gate, from which place Mr. Burch led the mare back to the tent.

We are constrained to think that the trial court was right, and that in taking off the bridle from this mare, and helping to put on her halter, and leaving her driver to lead her up to the feed-box, there was no negligence on the part of the defendant Milton Burch for which defendants should in any manner be held liable.

It is recommended that the judgment of the trial court be affirmed.

KIRKPATRICK and LOBINGIER, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.